[J-31-2014][M.O. – Stevens, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

CELESTE SELLERS AND RICHARD K. SELLERS, INDIVIDUALLY AND AS ADMINISTRATORS OF THE ESTATE OF JOSHUA DAVID SELLERS, DECEASED,

Appellants

v.

TOWNSHIP OF ABINGTON AND OFFICER EDWARD HOWLEY, INDIVIDUALLY AND AS AN EMPLOYEE OF TOWNSHIP OF ABINGTON AND LT. KARL KNOTT, INDIVIDUALLY AND AS AN EMPLOYEE OF TOWNSHIP OF ABINGTON,

Appellees

: No. 97 MAP 2013
:
: Appeal from the Order of the
: Commonwealth Court at No. 531 CD
: 2011 dated 6/5/13 affirming the order
: from the Montgomery County Court of
: Common Pleas, Civil Division, at No.
: 2007-14335 dated 11/30/10
:
:
:
:
:
:
:
:
:
:
:
:
: ARGUED: May 7, 2014

## CONCURRING OPINION

**MR. JUSTICE SAYLOR**          **DECIDED: December 29, 2014**

I agree with the majority's determination that, as a threshold matter, Section 8542(a)(1) of the Judicial Code requires the existence of a statutory or common law duty of care (in this case, to unknown passengers in a fleeing vehicle), and that the Vehicle Code does not establish such a duty on the part of a pursuing officer. See Majority Opinion, slip op. at 15-16 (citing 42 Pa.C.S. §8542(a)(1); 75 Pa.C.S. §3105).[1] However, my reasoning in support of affirmance rests on grounds different from those

---

[1] Following the convention of the majority opinion, I use the term "unknown passengers" to indicate passengers whose presence in the vehicle or connection to the fleeing driver is unknown to the pursuing officer. See Majority Opinion, slip op. at 5 n.5.

expressed by the majority. In particular, it is my view that, prior to the utilization of the Althaus factors, see Althaus v. Cohen, 562 Pa. 547, 553, 756 A.2d 1166, 1169 (2000), the litigants must first present record-based advocacy and comprehensive discussion of the competing policy matters implicated by the imposition of a new affirmative duty. See Lance v. Wyeth, __ Pa. __, __, 85 A.3d 434, 454 (2014). As they have not done so here, I find more appropriate the Court's approach to the duty question as employed in Lance and Seebold v. Prison Health Services, Inc., 618 Pa. 632, 57 A.3d 1232 (2012).

The Court has observed that the "task of rendering duty versus no-duty decisions . . . is one to which we are the least well suited," as such an inquiry "entails wading through 'shifting sands [with] no fit foundation.'" Seebold, 618 Pa. at 652-53, 57 A.3d at 1245 (quoting Dean William L. Prosser, Palsgraf Revisited, 52 MICH. L. REV. 1, 14-15 (1953)); see also Althaus, 562 Pa. at 553, 756 A.2d at 1169 ("[T]he legal concept of duty of care is necessarily rooted in often amorphous public policy considerations . . ..."). In this regard, the Legislature is in a superior position to assess social policy questions, given its ability to conduct investigations and hearings. See Seebold, 618 Pa. at 653, 57 A.3d at 1245. Accordingly, the Court has adopted the "default position that, unless the justifications for and consequences of judicial policymaking are reasonably clear with the balance of factors favorably predominating, we will not impose new affirmative duties." Id. at 653-54, 57 A.3d at 1245. Stated another way, it must be reasonably clear and certain that any change to the landscape of common law duties will serve the best interests of society. See Cafazzo v. Cent. Med. Health Servs., Inc., 542 Pa. 526, 537, 668 A.2d 521, 527 (1995) (quoting Hoven v. Kelble, 256 N.W.2d 379, 391 (Wis. 1977)). Thus, it is imperative that litigants engage in "a comprehensive discussion of the competing policies and present the sort of record (including empirical information) which would support an informed, legislative-type judgment, again, grounded in a clear

predominance of justifications." Lance, __ Pa. at __, 85 A.3d at 454 (citing Seebold, 618 Pa. at 657-62 & n.24, 57 A.3d at 1248-51 & n.24).

In my view, the present matter is emblematic of the type of policy balancing to which the adjudicatory process is ill suited, see id. at __, 85 A.3d at 454, ("[T]he adjudicatory process does not translate readily into the field of broad-scale policymaking." (citing Seebold, 618 Pa. at 652-53, 57 A.3d at 1245)), and this difficulty is magnified by the parties' failure to provide "a full and balanced record covering the range of relevant policy matters." Id. at __, 85 A.3d at 445. Instead, they offer only a cursory treatment of the implications of extending the common law duty of care to unknown passengers. In particular, Appellants only briefly discuss the policy concerns relative to the increased threat to human life if immunity is extended to officers engaging in high-risk pursuits premised on minor traffic violations. See Brief for Appellants at 51, 52-53. As for Appellees, they merely observe that there is a preeminent public interest in law enforcement's ability to ensure roadway safety; they assert that the imposition of a duty of care to passengers would effectively eliminate police pursuits. See Brief for Appellees at 23, 26.

In this way, the parties fail to effectively consider the spectrum of scenarios and possible attendant duties that may depend on such factors as the identity of a passenger, see, e.g., Brief for Appellees at 34 (dismissing, as not relevant to this case, the notion that policy considerations may weigh in favor of imposing a duty in kidnapping or child-involved situations), or the availability and effectiveness of current and emerging technologies available to police to avoid high-speed pursuits in the first instance. See, e.g., Benjamin Buchwalter, Return to "Reasonable" in Section 1983 Police Pursuit Excessive Force Litigation, 65 HASTINGS L.J. 1665, 1679-81 (2014) (discussing new technologies designed to identify fleeing suspects and halt pursued

vehicles without the need for a chase). Additionally, Appellants apparently recognized the importance of empirical evidence, as they introduced into the record an expert report opining, based on empirical analysis, that the pursuit in this case was improper. However, and as noted, the parties' narrow focus on the facts of this matter neglects the wider evidentiary perspective and discussion required for a broad-scale duty determination, notwithstanding that seemingly relevant information is publicly available.[2]

Thus, to my mind, the present advocacy falls critically short of "support[ing] an informed, legislative-type judgment . . . grounded in a clear predominance of justifications" that could warrant the extension of a duty of care to unknown passengers. Lance, __ Pa. at __, 85 A.3d at 454 (citing Seebold, 618 Pa. at 657-62 & n.24, 57 A.3d at 1248-51 & n.24). Moreover, I believe that this same deficiency deprives the Court of any ability, presently, to reasonably assess the broad policy issues posed by the Althaus factors. It is on this basis that I would reject Appellants' proffer favoring the judicial creation of a duty of care to unknown passengers in a fleeing vehicle.

As pertains to the evidentiary issue on which we granted review, I disagree with the majority's characterization of the in-car camera recording as "blatantly contradict[ing]" Appellants' claim that Officer Howley was driving in the opposite

---

[2] See, e.g., PENNSYLVANIA STATE POLICE BUREAU OF RESEARCH AND DEVELOPMENT, PENNSYLVANIA POLICE PURSUITS ANNUAL REPORT 9 (unnumbered pages) (2007), available at http://www.paucrs.pa.gov/UCR/Reporting/Pursuit/Annual/2007_Annual_Report.pdf ("The basic dilemma associated with high-speed police pursuit of fleeing individuals is deciding whether the benefits of potential apprehension outweigh the risks to police officers, the public, and the violator(s). The detailed analysis in this report can be used to help identify both positive and negative factors influencing the outcome of vehicular pursuits, validate or refute the merits of pursuit policies and apprehension techniques, and to recognize training successes and deficiencies. It is intended that the statistics gathered will enable police departments throughout the Commonwealth to enhance the safety of their officers and the public they serve.").

direction of the Ford Mustang prior to initiating the pursuit and, at that time, observed passengers in the vehicle. Majority Opinion, slip op. at 18. The camera captured only 30 seconds of video before the officer engaged his emergency lights, and thus, the recording does not indicate in what direction the police car was previously traveling or whether it had passed the Mustang. Accordingly, I believe the generally applicable rule of summary judgment, that review of the record is conducted in the light most favorable to the non-moving party, should control in this instance. See Young v. Commonwealth, Dep't of Transp., 560 Pa. 373, 376, 744 A.2d 1276, 1277 (2000). In any event, given that the resolution of the duty question is not dependent on whether the officer knew of other occupants in the vehicle, I consider this issue to be moot.