J-A08031-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GAIL R. CALLENDER, SR., AN INDIVIDUAL AND WENDY A. CALLENDER, HIS WIFE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| BRIGHTON MACHINE COMPANY, INC. A CORPORATION | |
| v. | |
| DANIELI HOLDINGS, INC. A CORPORATION AND ITS SUCCESSOR CORPORATIONS AND/OR SUCCESSOR IN INTEREST, DANIELI CORPORATION A CORPORATION AND DINIELI CORPORATION, DANIELI WEAN UNITED AND DANIELI SERVICE, AND/OR DANIELI TECHNOLOGY, INC. A CORPORATION, AND/OR DANIELI WEAN INC., A CORPORATION, AND/OR DANIELI UNITED, INC., A CORPORATION, AND/OR WEAN UNITED FOUNDRY PRODUCTS, INC. A CORPORATION, AND/OR WEAN UNITED, INC. AND/OR UNITED ENGINEERING, INC., A CORPORATION, AND/OR UNITED ENGINEERING AND FOUNDRY CO., A CORPORATION | |
| Appellee | No. 755 WDA 2013 |

Appeal from the Order Entered on April 8, 2013,
In the Court of Common Pleas of Allegheny County
Civil Division at No.: GD-07-026651

BEFORE: ALLEN, J., OLSON, J., and WECHT, J.

MEMORANDUM BY WECHT, J.: **FILED SEPTEMBER 17, 2014**

Appellants, Gail R. Callender, Sr. ("Callender"), and his wife, Wendy A. Callender (collectively, "the Callenders"), appeal from the order of April 8, 2013, which granted the second motion for summary judgment of Appellee, Brighton Machine Company, Inc. ("Brighton"), and dismissed all of the Callenders' and any other parties' claims against Brighton with prejudice. We affirm.

The following facts are summarized from the trial court's opinion of July 31, 2013. On December 18, 2005, Callender, an employee of Allegheny Ludlum Steel Corporation ("Allegheny Ludlum"), suffered a degloving injury to his left hand when it became trapped in the rollers of a leveller[1] on the No. 3 Blast & Pickle line at Allegheny Ludlum's Brackenridge facility. Trial Court Opinion ("T.C.O."), 7/31/2013, at 2. Callender had noticed that the leveller was not functioning properly and informed a co-worker that he was going into the repair pit beneath the machine to grease its gears. *Id.* For unknown reasons, the co-worker did not turn off the line. *Id.* Callender lost his balance while positioning himself to oil the swing gear on the leveller, and his left hand contacted the leveller rollers and was pulled into the machine. *Id.* at 3.

_____

[1] The leveller and other components on the No. 3 Blast & Pickle line unwind and straighten coiled steel, crimp coils to each other, clean the resulting sheet of steel, and then recoil it. T.C.O. at 2. The leveller at issue was installed at Brackenridge on April 26, 1952, and has never been removed. *Id.* at 7.

Since 1980, Brighton has serviced, built, and rebuilt component parts for the No. 3 Blast & Pickle line at the Brackenridge facility, including the leveller. *Id.* at 4. Brighton manufactures and supplies various parts based upon customers' technical drawings and engineering specifications, but it is not the only parts supplier to the Blast & Pickle line. *Id.* at 7. Allegheny Ludlum performs the majority of work and maintenance in-house, and the line is laid out similarly to lines at other strip processing plants. *Id.* Joseph Downie, owner of Brighton, has visited the facility numerous times, but has never studied the line or needed to know how the Brighton-manufactured replacement components work in the overall machine, nor does Brighton do any work on the leveller's electronics, wiring, safety devices, or emergency devices. *Id.* at 7-8. Any modifications in Allegheny Ludlum's designs by Brighton are related to the maintenance, strength, or reliability of the component, not the overall functionality of the machines. *Id.* at 7.

On April 1, 2008, the Callenders filed a complaint against Brighton raising claims of, *inter alia*, negligence, strict liability, and breach of warranty.[2] Brighton answered with a new matter and cross-claim against

---

[2] The Callenders also filed complaints against United Foundries, Inc., f/k/a United Engineering Foundry Products, Inc., Wean United Foundry Products, Inc., UEI, Inc., f/k/a United Engineering, Inc., and UEFC, Inc. However, these defendants resolved the Callenders' claims in "an amicable Joint Tortfeasor Release and Settlement Agreement" and are not parties to the instant appeal. Letter of James F. Marrion to Prothonotary, 10/18/2013, at 1.

the other defendants on July 9, 2008.  The parties undertook discovery in the form of interrogatories and depositions of Downie and James Kunst, a designated representative of Allegheny Technologies.

On May 4, 2010, Brighton filed a motion for summary judgment, which, after a hearing and supplemental briefing, the trial court denied.  ***See*** Order, 8/31/2010.  After more discovery, and following settlement of the Callenders' claims against all of the other defendants, Brighton Machine filed a second motion for summary judgment on July 5, 2012.  The Callenders opposed the motion, and, after briefing and oral argument, the court ordered the parties to file position statements regarding Count XXX of the complaint for breach of warranty.[3]  On April 5, 2013 (filed April 8, 2013), the trial court granted Brighton's motion for summary judgment and dismissed

_____

[3]     As explained by the trial court:

Both of Brighton's motions for summary judgment and brief[s] in support thereof specifically referred to and requested dismissal of all counts against it.  Brighton, however, did not make specific argument as to why Count XXX (relating to breach of warranty) should be dismissed.  Conversely, [the Callenders] made no argument in support of Count XXX.  On February 14, 2013, [the court] ordered the parties to address the issue of Brighton's alleged breaches of warrant[y] under the Pennsylvania Uniform Commercial Code (UCC).  [The Callenders] filed a Position Statement and Brighton filed a Reply Brief.

T.C.O. at 24.

all of the Callenders' and any other parties' claims against Brighton with prejudice. The Callenders timely appealed.[4]

The Callenders present the following questions for our review:

[1.] Does a party opposing summary judgment establish a genuine issue of material fact regarding the existence of a defect when the undisputed evidence of record establishes that the machine in question was not functioning as expected to the point where its user attempts to correct the issue and that it lacked adequate safeguards and warnings that would [have] rendered the machine less dangerous to its users?

[2.] Is a party who seeks summary judgment in its favor on the basis that it played an insignificant role in the maintenance and repair of defective equipment entitled to judgment as a matter of law when the party opposing summary judgment presents evidence showing the movant provided engineering services as well as participated in the design and upkeep of the machinery?

[3.] Does a party opposing summary judgment establish a genuine issue of material fact that component parts to a larger machine supplied by a party seeking summary judgment are unreasonably dangerous, *i.e.* defective, when the parts supplied are the ones that substantially contributed to a party's loss and the supplier knew of or should have known of the danger [its] products posed to users of the integrated machine?

[4.] Does an entity who repairs and rebuilds antiquated equipment for consideration, including taking steps to increase the longevity thereof, over the course of over two decades owe a duty to warn users of dangers associated with the repaired machine?

[5.] If a party establishes genuine issues of material fact alleging failure to warn defects and defective design defects in

_____

[4] The trial court did not order the Callenders to file a Rule 1925(b) statement, but entered an opinion on July 31, 2013. **See** Pa.R.A.P. 1925.

regard to component parts, should that party's claims for breach of implied warranty's [*sic*] also survive summary judgment?

Callenders' Brief at 3-4.

Our standard of review of a trial court's order granting summary judgment is well-settled:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof . . . establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Murphy v. Duquesne Univ. of the Holy Ghost***, 777 A.2d 418, 429 (Pa. 2001) (case citations omitted).

> [T]he issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is de novo. This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1159 (Pa. 2010) (citations omitted).

- 6 -

In their first issue, the Callenders assert that the court erred in dismissing their strict liability claim because "[t]he leveller and its components were defective and unreasonably dangerous to their users." Callenders' Brief at 19. Specifically, the Callenders argue that they established genuine issues of material fact as to whether the leveller was "not functioning properly," thus "diminish[ing]" their "duty to establish a specific defect." *Id.* at 20. They also maintain that their "experts established genuine issues of material fact that the equipment responsible for Mr. Callender's injury contained design defects as well as failure to warn defects." *Id.* at 21. We disagree.

We begin with the Callenders' argument that their claims should have survived summary judgment because they had a "diminished" duty to establish a specific defect due to the leveller's malfunction. *Id.* at 20.

> When advancing a theory of strict product liability, a plaintiff has the burden of showing that the product was defective, that the defect was the proximate cause of his or her injuries and that the defect existed at the time the product left the manufacturer. In certain cases of alleged manufacturing defects, however, the plaintiff need not present direct evidence of the defect. When proceeding on a malfunction theory, the plaintiff may "present a case-in-chief evidencing the occurrence of a malfunction and eliminating abnormal use or reasonable, secondary causes for the malfunction." *O'Neill v. Checker Motors Corp.*, 567 A.2d 680, 682 (Pa. Super. 1989). . . . From this circumstantial evidence, a jury may be permitted to infer that the product was defective at the time of sale.
>
>> Although proof of a specific defect is not essential to establish liability under this theory, the plaintiff cannot depend upon conjecture or guesswork. The mere fact that

an accident happens, even in this enlightened age, does not take the injured plaintiff to the jury.

The malfunction theory, thus, does not relieve the burden of establishing a defect. However, the malfunction itself is circumstantial evidence of a defective condition.

*Dansak v. Cameron Coca-Cola Bottling Co.*, 703 A.2d 489, 495-96 (Pa. Super. 1997) (some citations and internal quotation marks omitted; citations modified).

Accordingly, a plaintiff may often rely on circumstantial evidence, and the inferences that may reasonably be drawn therefrom, to prove his case. Although the mere happening of an accident does not establish liability, . . . the addition of other facts tending to show that the defect existed before the accident, such as its occurrence within a short time after sale, or proof of the malfunction of a part for which the manufacturer alone could be responsible, may make out a sufficient case . . . So likewise may proof that other similar products made by the defendant met with similar misfortunes, or the elimination of other likely causes by satisfactory evidence. In addition, there are some accidents, as where a beverage bottle explodes or even breaks under normal handling, as to which there is common experience that they do not ordinarily occur without a defect; and this permits the inference. This Court in *MacDougall v. Ford Motor Co.*, [257 A.2d 676 (Pa. Super. 1969)], held that "the occurrence of a malfunction of machinery in the absence of abnormal use and reasonable secondary causes is evidence of a 'defective condition' within the meaning of [the Restatement (Second) of Torts] § 402A . . . ." *Id.* . . . at 680. After *MacDougall*, Pennsylvania courts have been consistent in holding that the malfunctioning of a product is circumstantial evidence of a defective condition in spite of the lack of evidence of any specific defect in the product.

*Cornell Drilling Co. v. Ford Motor Co.*, 359 A.2d 822, 826 (Pa. Super. 1976) (some citations omitted).

Based upon this case law, if the leveller malfunctioned, the malfunction would constitute circumstantial evidence of the defect element

of a strict liability claim. However, the Callenders have not adduced any additional evidence that the leveller malfunctioned. Their experts concededly did not inspect the machinery. Report, 2/23/2012, at 5 § 4.

More importantly, the Callenders have failed to carry their burden of proof with regard to the remaining elements: that the "defect was the proximate cause of [Callender's] injuries and that the defect existed at the time the product left the manufacturer." **Dansak**, 703 A.2d at 495. "Liability in negligence or strict liability is not imposed upon a manufacturer simply for the manufacture of a defective product. Rather, the plaintiff must demonstrate that the injuries sustained were proximately caused by the product's defect." **Sherk v. Daisy-Heddon, Div. of Victor Comptometer Corp.**, 450 A.2d 615, 617 (Pa. 1982).

Here, the Callenders' experts opined:

> Based on our review of all documents and our experience with these types of machinery and safety related issues, we conclude that if additional safety features were implemented on the No.[]3 Blast & Pickle line in Allegheny Ludlum's Brackenridge Plant, the accident involving Mr. Callender could have been prevented on December 18, 2005. This conclusion has been reached with a reasonable degree of engineering certainty.

Report at 5 § 5.[5] Thus, the Callenders' experts attribute the cause of Callender's injuries to the lack of safety features on the line, not the

_____

[5] The expert report "reserve[d] the right to revise this Report if additional information and facts become available." Report at 5 § 5. However, as noted by the trial court, the Callenders did not file any additional or revised expert reports. T.C.O. at 3 n.1.

allegedly malfunctioning leveller. The Callenders also have failed to adduce any evidence that any replacement parts manufactured by Brighton were installed in the leveller at the time of Callender's injury. *See* T.C.O. at 11. Absent such evidence, the Callenders cannot establish that any defect existed when the components left Brighton. *See Dansak*, 703 A.2d at 495. Thus, the Callenders' argument that the court erred in granting summary judgment simply because the leveller allegedly malfunctioned does not merit relief where they failed to support the remaining elements of their claim.

Second, the Callenders argue that they carried their burden of proof regarding their design defect and failure to warn claims.

> It is well established that there are circumstances where a manufacturer's failure to warn of latent dangers in the use or operation of a product can render a properly designed product unreasonably dangerous and defective for purposes of strict product liability. It is also recognized that limits on a manufacturer's duty to warn are placed at issue where, as in the present case, the manufacturer supplies a mere component of a product that is assembled by another party and dangers are associated with the use of the finished product.

*Jacobini v. V. & O. Press Co.*, 588 A.2d 476, 478-79 (Pa. 1991).

A plurality decision by our Supreme Court in *Wenrick v. Schloemann-Siemag Aktiengesellschaft*, 564 A.2d 1244 (Pa. 1989), is particularly instructive.[6] In *Wenrick*, a mechanic working in the Cerro Metal

_____

[6] While we recognize that a plurality opinion by the Supreme Court is not binding precedent on this Court, we may find it to be persuasive. *See In re K.D.*, 744 A.2d 760, 761 (Pa. Super. 1999).

Products plant was killed while repairing an extrusion press when a billet loader retracted and crushed him. *Id.* at 1245. Circumstantial evidence showed that an unguarded switch was accidentally triggered by a workman descending steps into the press' repair pit, causing the billet loader to retract. *Id.* at 1246. The mechanic's widow brought claims against, *inter alia*, Eaton Corporation, the successor-in-interest to Cutler-Hammer, the supplier and designer of the press's electrical control system, alleging as follows:

> [T]he absence of a guard to cover the actuating part of the switch was a defect in design and manufacture as installed and as used. [The expert witness] also testified that, in his opinion, in accordance with accepted engineering practice Cutler-Hammer had a duty to warn SMS AG[, the manufacturer and designer of the press,] about the danger posed by the location of the unguarded switch above the steps.

*Id.* at 1246. The jury found against Eaton for strict liability and negligence, and the trial court denied Eaton's motion for judgment notwithstanding the verdict. This Court reversed, and remanded for entry of judgment in favor of Eaton. Ultimately, the Court affirmed the decision of the Superior Court for the following reason:

> Cutler-Hammer's task in designing the electrical control system did not include the physical placement of any mechanisms on the manufactured product. All the decisions and actions whereby the danger was created—the type of switch (unguarded), its location, and the location of the service pit and its access steps— were the responsibility of SMS AG.

*Id.* at 1248. Accordingly, Cutler-Hammer, and its successor-in-interest, Eaton, had no duty to warn about the unguarded switch.

- 11 -

Similarly, Brighton manufactures and supplies spare parts according to Allegheny Ludlum's specifications. Brighton modifies Allegheny Ludlum's specifications to the extent that it seeks to improve the strength, durability, and reliability of the components it manufactures. Brighton does not dictate the layout of the leveller, its electronic systems, the configuration of its repair pit, or the layout of the No. 3 Blast & Pickle Line, all of which predate Brighton's repair work and are "basically the same" and relatively standard across the steel industry as a whole. Callenders' Brief, at 9, 12; *see also* Deposition of Joseph Downie, 12/18/2009, at 53-54. Thus, like Cutler-Hammer in *Wenrick*, Brighton's task in manufacturing replacement components for existing machinery did not include determining the physical placement or layout of the machines responsible for Callender's injury. It is not enough that Brighton was knowledgeable about the line as a whole. *See Wenrick*, 564 A.2d 1248. The Callenders have failed to adduce any evidence that Brighton had any control over "the assembly of the final product" and, therefore, had a duty to act or warn Callender or Allegheny Ludlum that the leveller was dangerous. *Jacobini*, 588 A.2d at 478-79; *see also Wenrick*, 564 A.2d at 1248. Thus, the trial court did not abuse its discretion in dismissing the Callenders' strict liability claim, and the Callenders' first issue does not merit relief.

In their second issue, which to some extent responds to the above analysis, the Callenders assert that "genuine issues of material fact exist regarding Brighton Machine's role with the equipment involved." Callenders'

Brief at 22. Specifically, they claim that the trial court erred in its determination of the extent of Brighton's role at Allegheny Ludlum and that the court was "obligated to place the burden of proving the nonexistence of material facts upon Brighton Machine." *Id.* at 25. They also argue that the court violated the ***Nanty-Glo*** rule[7] by relying upon the depositions of Joseph Downie, James Kunst, and Amos Glen, and implicitly relied upon an improper credibility determination resolving apparent inconsistencies in the testimonies of those witnesses. *Id.* at 25-26. We disagree.

> [F]ailure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.
>
> > Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder.

***Sokolsky v. Eidelman***, 93 A.3d 858, 862 (Pa. Super. 2014) (citations and quotation marks omitted).

The Callenders contend that they established a genuine issue of material fact regarding Brighton's role at Allegheny Ludlum because Allegheny Ludlum's representative, James Kunst, testified that Brighton supplies spare parts, "engineering-type services," and "works with

_____

[7] ***See Nanty-Glo v. Am. Surety Co.***, 163 A. 523 (Pa. 1932).

- 13 -

[Allegheny Ludlum] on upgrades to equipment design." Callenders' Brief at 24. Callender's supervisor, Mark Graham, stated that Joseph Downie is an engineer with "the capability of certifying things for 'insurance purposes,'" and Allegheny Ludlum had been downsizing its own maintenance department. *Id.*

Based upon our review of the depositions, we agree with the trial court that "[t]here is no evidence that Brighton was ever consulted with regard to safety issues." T.C.O. at 21. Graham repeatedly stated that Brighton was only one of "several" manufacturers fabricating replacement parts for the line at Allegheny Ludlum. Deposition of Mark Graham, 9/13/2012, at 14, 19, 38. Furthermore, while Graham stated that Allegheny Ludlum's in-house maintenance department "seems to be . . . shrinking," he also observed that "[Allegheny Ludlum] still do[es] a lot, but we always did send things out." *Id.* at 37. Thus, the Callenders failed to adduce sufficient evidence to connect Brighton's work with the safety engineering or placement of the leveller within the No. 3 Blast & Pickle line, or to establish that Brighton exclusively had taken over relevant maintenance work on the line. **See Sokolsky**, 93 A.3d at 862. Therefore, the Callenders failed to raise an issue of material fact regarding the scope of Brighton's involvement with the leveller and the No. 3 line, and the trial court did not err in granting summary judgment. *Id.*

Furthermore, the trial court did not violate the **Nanty-Glo** rule. Specifically, the Callenders contend that "the trial court adopted the oral

- 14 -

testimony of Joseph Downie, James Kunst and Amos Glen where these gentlemen testified [that] Brighton Machine played no role in the design and maintenance of the machines at issue." Callenders' Brief at 25.

The **Nanty-Glo** rule provides that "oral testimony alone is generally insufficient to establish the absence of material fact necessary for the entry of summary judgment." **Checchio by and through Checchio v. Frankford Hosp.—Torresdale Div.**, 717 A.2d 1058, 1062 (Pa. Super. 1998).

> Initially, it must be determined whether the plaintiff has alleged facts sufficient to establish a *prima facie* case. If so, the second step is to determine whether there is any discrepancy as to any facts material to the case. Finally, it must be determined whether, in granting summary judgment, the trial court has usurped improperly the role of the jury by resolving any material issues of fact.

**Dudley v. USX Corp.**, 606 A.2d 916, 920 (Pa. Super. 1992). "If credibility is in issue, oral proof requires the jury's consideration and prevents the entering of a summary judgment. But if plaintiff fails to establish a *prima facie* case, the mere fact that his proof is oral does not provide a basis for placing the issue before a jury." **Thompson Coal Co. v. Pike Coal Co.**, 412 A.2d 466, 474 (Pa. 1979).

Here, the trial court stated that it "reviewed and considered the pleadings, record, [the Callenders'] experts' report, [and the] briefs and arguments of the parties." T.C.O. at 6. The court noted that it "read the excerpts" from the depositions, but also "reviewed the multitude of exhibits filed by [the Callenders]." **Id.** The court referred to the Callenders' "parts-

- 15 -

related exhibits," comprised of, *inter alia*, invoices, packing lists, written work orders, and price quotes, and concluded that "[t]he record reflects that any changes made by Brighton were at [Allegheny Ludlum's] request or per discussions with [Allegheny Ludlum], and subject to [Allegheny Ludlum's] approval." ***Id.*** at 11 (footnote omitted). The court explicitly relied upon these exhibits to determine that "[t]here is no evidence of record to establish that the parts in place on the date Mr. Callender was injured were manufactured by Brighton." ***Id.*** at 11. Thus, the trial court did not rely exclusively upon depositions in determining that the Callenders failed to state *prima facie* claims for strict liability, negligence, or breach of warranty. ***Id.*** at 22, 23, and 27. Accordingly, there is no violation of the ***Nanty-Glo*** rule. ***See Checchio***, 717 A.2d at 1062; ***see also Thompson Coal Co.***, 412 A.2d at 474. This issue does not merit relief.

In their third issue, the Callenders argue that "[i]ssues of material fact exist as to whether the component parts Brighton Machine designed, manufactured and supplied caused the Callenders' loss and whether the same were foreseeable to Brighton Machine." Callenders' Brief at 26. Specifically, the Callenders contend Brighton is liable under section 402A of the Restatement (Second) of Torts because "Brighton Machine was aware or should have been aware of the danger its products [posed to] users of the leveller" and "yet failed to provide warnings [f]or Mr. Callender or his employer." ***Id.*** at 28. We disagree.

"Since **Webb v. Zern**, 220 A.2d 853 (Pa. 1966), the Pennsylvania Supreme Court has recognized a plaintiff's right to pursue an action in strict liability against the manufacturer of a product pursuant to section 402A of the Restatement (Second) of Torts." **Kiak v. Crown Equip. Corp.**, 989 A.2d 385, 389 n.1 (Pa. Super. 2010).[8]  Section 402A provides:

**§ 402A Special Liability of Seller of Product for Physical Harm to User or Consumer**

(1)  One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a)  the seller is engaged in the business of selling such a product, and

(b)  it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2)  The rule stated in Subsection (1) applies although

(a)  the seller has exercised all possible care in the preparation and sale of his product, and

(b)  the user or consumer has not bought the product from or entered into any contractual relation with the seller.

_____

[8]  **But see Tincher v. Omega Flex, Inc.**, 64 A.3d 626, 626 (Pa. 2013) (granting review on the question: "Whether this Court should replace the strict liability analysis of Section 402A of the Second Restatement with the analysis of the Third Restatement").  Nonetheless, our Supreme Court has not yet decided the case, and "we are bound to apply the law of Pennsylvania as it now exists." **Swanson v. Carlson**, 527 A.2d 577, 578 (Pa. Super. 1987).

Restatement (Second) of Torts 402A.

To state a claim under this section, the Callenders must establish: "1) a product; 2) the sale of that product; 3) a user or consumer; 4) the product defect which makes the product unreasonably dangerous; and 5) the product defect was the proximate cause of the harm." *Toth v. Economy Forms Corp.*, 571 A.2d 420, 422 (Pa. Super. 1990) (citations omitted).

> The imposition of liability in any products case, including one based on [s]ection 402A strict liability, requires a showing that the plaintiff's injury was caused by some defect in the product. Thus, where a finding that the product is defective within the meaning of section 402A is predicated on the theory that the manufacturer failed to provide adequate warnings of the dangerous propensities of the product the plaintiff must prove the failure to warn caused plaintiff's injury.

*Sherk*, 450 A.2d at 620.

> [L]imits on a manufacturer's duty to warn come into play where, as in the present case, the manufacturer supplies a mere component of a final product that is assembled by another party and dangers are associated with the use of the finished product. This is particularly true where the component itself is not dangerous, and where the danger arises from the manner in which the component is utilized by the assembler of the final product, this being a matter over which the component manufacturer has no control.

*Jacobini*, 588 A.2d at 478-79. Furthermore, a company that neither manufactured nor supplied the defective product is not liable under a theory of strict liability or failure to warn. *See Toth*, 571 A.2d at 422-23.

Here, the trial court determined that "[t]here is no evidence of record to establish that the parts in place on the date Mr. Callender was injured

were manufactured by Brighton." T.C.O. at 11. In response, the Callenders direct our attention to Graham's deposition, which identified:

1) A spindle that supplied the rotational force to leveller rollers, without which the levellers could not turn;

2) Bearing caps, half-bearing retainers and a housing cap for consideration of [*sic*] that held the leveller rollers in which Mr. Callender's left ha[n]d was caught[.]

Callenders' Brief at 27 (record citations omitted). The parts identified by the Callenders are documented, respectively, in a purchase order dated October 10, 1995, and a job order for a bearing cap, a housing cap, and a half-bearing retainer. *See* Graham Deposition at 50, 53. Although Graham appears to establish that these are the components of a leveller, the Callenders identify no evidence showing that these particular parts were installed in the leveller at the time of Callender's injury, who had installed them, or whether they were installed "without substantial change in the condition in which [they were] sold." Restatement (Second) of Torts § 402A. Furthermore, the Callenders' experts concededly never inspected the leveller or the No. 3 line. Report at 5 § 4. Therefore, the Callenders have failed to establish that Brighton parts were, in fact, involved in Callender's injury.

Moreover, as previously discussed, the duty to warn Callender resided with Allegheny Ludlum, not Brighton, which supplied replacement components to a preexisting assembly line laid out in a manner over which Brighton exercised no control. *See Wenrick*, 564 A.2d 1248. Thus, the

Callenders failed to state a claim under section 402A for which they could recover from Brighton. **See Toth**, 571 A.2d at 422. This issue does not merit relief.

In their fourth issue, the Callenders contend that, under Section 404 of the Restatement (Second) of Torts, "[a] company that services equipment for over twenty-five years, [and] redesigns, manufactures[,] and supplies component parts with knowledge as to their use owes duties to users of the integrated machine." Callenders' Brief at 29. They argue that, under common law negligence principles, Brighton owed Callender a duty of care. **Id.** at 29-31. We disagree.

Section 404 provides:

**§ 404 Negligence in Making, Rebuilding, or Repairing Chattel**

One who as an independent contractor negligently makes, rebuilds, or repairs a chattel for another is subject to the same liability as that imposed upon negligent manufacturers of chattels.

Restatement (Second) of Torts § 404. "It is axiomatic that in order to maintain a negligence action, the plaintiff must show that the defendant had a duty to conform to a certain standard of conduct; that the defendant breached that duty; that such breach caused the injury in question; and actual loss or damage." **Phillips v. Cricket Lighters**, 841 A.2d 1000, 1008 (Pa. 2003) (citation and quotation marks omitted).

The Callenders cite **Althaus v. Cohen**, 756 A.2d 1166 (Pa. 2000), for the proposition that "actors have the general duty to refrain from causing

harm to others as a general principle under common law." Callenders' Brief at 30. They contend that "Mr. Downie himself has stated that he has rebuilt nearly every piece of equipment" on the line, and that the court erred in relying upon oral testimony in granting summary judgment. *Id.* at 31. However, as previously discussed, the Callenders failed to establish a genuine issue of material fact as to whether Brighton's components were in the leveller at the time of Callender's injury. *See* T.C.O. at 11. Moreover, "if plaintiff fails to establish a *prima facie* case, the mere fact that his proof is oral does not provide a basis for placing the issue before a jury." *Thompson Coal Co.*, 412 A.2d at 474. Thus, the Callenders cannot rely upon Downie's testimony to establish the existence of a genuine issue of material fact. *See Murphy*, 777 A.2d at 429. The Callenders are not entitled to relief on this issue.

Finally, in their fifth issue, the Callenders assert that their "warranty claims should proceed to trial." Callenders' Brief at 31. They argue that they have "established genuine issues of material fact in regard to the § 402A claims" because they have established:

> several malfunctions, the most important being that the leveller and its components lacked appropriate visual warning signs that it was operational, the leveller and its components lacked adequate guarding to prevent entry into the zone of danger while it was operational and the leveller and its components lacked appropriate kill switches.

*Id.* at 31, 32.

As previously discussed, the Callenders have failed to establish that Brighton, as a components manufacturer who did not control the final layout of the No. 3 line, owed Callender a duty to warn of latent dangers in the use or operation of Allegheny Ludlum's leveller. *See Jacobini*, 588 A.2d at 478-79; *see also Wenrick*, 564 A.2d at 1248. Thus, the Callenders have failed to raise a genuine issue of material fact that would render their breach of warranty claim viable. *Murphy*, 777 A.2d at 429. The trial court did not abuse its discretion in granting Brighton's motion for summary judgment on the breach of warranty claim. Accordingly, this issue lacks merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/17/2014