**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**
**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| LINDSAY FRANCZYK, | : | No. 11 WAP 2022 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered September |
| | : | 24, 2021 at No. 1090 WDA 2020, |
| v. | : | affirming the Order of the Court of |
| | : | Common Pleas of Allegheny County |
| | : | entered May 15, 2020 at No. GD-18- |
| THE HOME DEPOT, INC. D/B/A HOME | : | 010285. |
| DEPOT, PHILIP ROGERS, AND THOMAS | : | |
| MASON, | : | ARGUED:  November 29, 2022 |
| | : | |
| Appellants | : | |

**OPINION**

JUSTICE WECHT                                                 DECIDED: APRIL 19, 2023

Pennsylvania's Workers' Compensation Act[1] creates a comprehensive statutory remedy for workplace injuries.  The Act reflects a compromise that has prevailed in Pennsylvania for decades: in exchange for their mandatory contributions to a no-fault insurance program, employers avoid the risks and uncertainties of defending against lawsuits arising from such injuries.  However, while the Act generally precludes employees from bringing workplace injury claims against their employers, it preserves the employees' rights to bring negligence claims against third parties who bear some

---

[1]      Act of June 2, 1915, P.L. 736, No. 338, art. 1, 101, *codified as amended at* 77 P.S. §§ 1, *et seq.* ("WCA" or "the Act").

responsibility for employee injuries. When an employee recovers on such a claim, the employer may seek "subrogation," recouping its workers' compensation expenses up to the amount recovered from the third party.

The WCA's linchpin is its "exclusivity provision," which provides that "[t]he liability of any employer under this act shall be exclusive and in place of any and all other liability to such employees . . . in any action at law or otherwise on account of any injury or death . . . or occupational disease."[2] Over the long history of the Act, our courts have recognized only a few narrow exceptions to this exclusivity. In the instant case, the trial court recognized a novel exception and denied the employer's motion for summary judgment. The Superior Court affirmed the trial court's decision. We disagree. The exception proffered by the lower courts cannot be reconciled with the Act's design, purpose, or plain language. Thus, we reverse.

Plaintiff-Respondent Lindsay Franczyk, was working at a Home Depot store when a customer's dog bit her.[3] Franczyk reported the bite promptly to her supervisors, Philip Rogers and Thomas Mason (collectively with Home Depot, "Defendants"[4]). Defendants investigated, but they barred Franczyk from "hav[ing] any further contact or interaction with the dog owner or any witnesses."[5] Defendants located and questioned two

---

[2]    *Id.* § 481(a).

[3]    Because this case arises in the context of Defendants' motion for summary judgment, our account accepts Franczyk's pleaded allegations as true and grants her the benefit of all favorable inferences. *See Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010).

[4]    We use "Defendants" to refer interchangeably either to all three Defendants or to Rogers and Mason as the individual agents of Home Depot as context requires.

[5]    Complaint ¶16.

individuals who (separately) had brought dogs into the store, and also spoke to an eyewitness, but ultimately allowed all of them to leave the store without taking any identifying or contact information. Franczyk later was diagnosed with cubital tunnel syndrome, which required surgical repair. Franczyk claimed and received WCA benefits.

Franczyk sued Defendants. In her relevant claim, Franczyk asserts that Defendants failed to investigate the incident sufficiently, and that they negligently allowed the dog owner and witnesses to leave without obtaining identifying information. She contends that these acts and omissions denied her the opportunity to file a third-party suit against the dog owner.

After the pleading and discovery phases of the litigation concluded, Defendants filed a motion for summary judgment, claiming immunity under the WCA's exclusivity provision, which states:

**§ 481. Exclusiveness of remedy; actions by and against third party; contract indemnifying third party**

(a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes [*sic*[6]] . . . entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

(b) In the event injury or death to an employe is caused by a third party, then such employe . . . may bring [her] action at law against such third party, but the employer, his insurance carrier, their servants and agents, employes, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or

---

[6] Although peculiar and seemingly archaic, the statute's generic use of "employe" rather than the more common "employee" is not technically erroneous. *See Harmon v. Unemployment Comp. Bd. of Rev.*, 207 A.3d 292, 310 n.1 (Pa. 2019) (Wecht, J., concurring) (discussing Bryan Garner's identification of the usage's potential French origin in Bryan A. Garner, A Dictionary of Modern Legal Usage (2d. ed. 1995)).

indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.[7]

Defendants contended that, because Franczyk's injury occurred in the course of her employment, Section 481 bars her claim notwithstanding Defendants' failure, if any, to act more diligently in securing the information she needed to bring a third-party claim.

The trial court denied summary judgment. Citing a Florida decision, the court explained:

> Defendants should be estopped from raising the exclusivity provision of the Workers' Compensation Act . . . . Simply put, Defendants cannot fail to obtain any identifying information from the third party, and then turn around and tell [Plaintiff] that her only other remedy in this case is against that third party who she has no way to identify. At a minimum, there exists a genuine question as to whether the failure to obtain that information rises to the level of negligence and summary judgment is inappropriate.[8]

The trial court offered no further account or definition of the duty that it believed would anchor a claim for negligence, nor any further legal authority for such a duty.

The Superior Court affirmed in a unanimous, nonprecedential decision.[9] That court observed that the Act's exclusivity provision is not absolute under all circumstances. For example, WCA exclusivity did not bar a common-law suit for "fraudulent misrepresentation" where neither the toxic exposure causing injury nor the original injury

---

[7]     77 P.S. § 481.

[8]     Trial Court Opinion, 12/17/2020, at 3-4; *see Quality Shell Homes & Supply Co., Inc. v. Roley*, 186 So.2d 837 (Fl. Ct. App. 1966) (holding that an employer's misleading assertion that a workplace injury was not covered by workers' compensation and refusal voluntarily to remit payment estopped it from raising exclusivity to preclude the employee's civil claim).

[9]     *Franczyk v. The Home Depot, Inc.*, 1090 WDA 2020, 2021 WL 4352306 (Pa. Super. Sept. 24, 2021) (memorandum).

itself was the basis for the claim.[10]  Rather, the injury asserted was an aggravation of the original workplace injury that might have been prevented or mitigated but for the employer's failure to share material information with the plaintiff.[11]  As well, suit was not barred when an intellectually disabled employee was sexually assaulted by a coworker after the employer allegedly had failed to provide sufficient protections against such assault.[12]

Like the trial court, the Superior Court embraced Franczyk's view that she did not seek to recover from Defendants for the dog bite itself, but rather for the economic harm she suffered when she lost the opportunity to file a third-party claim against the tortfeasor dog owner.  The Superior Court concluded that Defendants were "estopped" from seeking WCA protection when their acts "effectively stripped [Franczyk] of her ability to file a claim against the third-party dog owner, as contemplated by our legislature."[13]  Accordingly, the Superior Court ruled that the trial court neither erred nor abused its discretion in denying summary judgment.

In resolving the questions before us,[14] we begin with the WCA's text.  The statute's plain language is our polestar in discerning the General Assembly's intent.  Only if we find

---

[10]    *Id.*, at *4 (citing *Martin v. Lancaster Battery Co., Inc.*, 606 A.2d 444 (Pa. 1992)).

[11]    *Id.*

[12]    *Id.* (citing *Krasevic v. Goodwill Indus. Of Central Pa., Inc.*, 764 A.2d 561 (Pa. Super. 2000)).

[13]    *Id.*, at *5.

[14]    Specifically, we granted review to consider the following questions:

(1) Where an employee suffers a workplace injury fairly attributable to a non-employer third party, is the employer precluded by 77 P.S. § 481's exclusive remedy provision from bringing a tort claim against the employer

the relevant provision to be ambiguous—*i.e.*, if it is susceptible to two or more reasonable understandings[15]—will we look elsewhere for evidence of the legislature's intentions.[16] We consider statutory language in its full context, not in isolation, and we "must not overlabor to detect or manufacture ambiguity where the language reveals none."[17]

When we interpret the WCA, we find ourselves on familiar ground. This Court has explained:

> The exclusivity clause of the [WCA], 77 § P.S. 481, reflects the historical *quid pro quo* between an employer and an employee whereby the employer assumes liability without fault for a work-related injury, but is relieved of the possibility of a larger damages verdict in a common[-]law action. The employee benefits from the expeditious payment of compensation but forgoes recovery of some elements of damages. The comprehensive system of substantive, procedural, and remedial laws comprising the [workers'] compensation system should be the exclusive forum for redress of injuries in any way related to the work place.[18]

The Act provides:

> Every employer shall be liable for compensation for personal injury to . . . each employe, by an injury in the course of [her] employment, and such

---

for affirmative conduct that impedes the employee's ability to seek relief against the third party?

(2) Does the Superior Court's decision in this case conflict with its decision in *Kulik v. Mash*, 982 A.2d 85 (Pa. Super. 2009)?

*Franczyk v. Home Depot, Inc.*, 274 A.3d 1228 (Pa. 2022) (*per curiam*). Because we agree with Defendants that the Act precludes Franczyk's claims, the narrower question concerning *Kulik*, which pertains to co-employee immunity from individual liability under the WCA, is moot.

[15]    *See A.S. v. Pennsylvania State Police*, 143 A.3d 896, 905-06 (Pa. 2016).

[16]    *See Thomas Jefferson Univ. Hosps., Inc., v. Pennsylvania Dept. of Labor & Indus.*, 162 A.3d 384, 389 (Pa. 2017); see generally 1 Pa.C.S. § 1921.

[17]    *Sivick v. State Ethics Comm'n*, 238 A.3d 1250, 1264 (Pa. 2020).

[18]    *Ducjai v. Dennis*, 656 A.2d 102, 109 (Pa. 1995) (cleaned up).

compensation shall be paid in all cases by the employer, without regard to negligence, according to the [statutory] schedule . . . .[19]

The WCA also defines "personal injury" and "injury in the course of . . . employment":

> The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe, regardless of [her] previous physical condition, . . . arising in the course of [her] employment and related thereto . . . .  The term "injury arising in the course of [her] employment," as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to [her], and not directed against [her] as an employe or because of [her] employment; nor shall it include injuries sustained while the employe is operating a motor vehicle provided by the employer; . . . but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer . . . .[20]

These definitions make clear that the General Assembly anticipated and addressed claims arising from injuries occasioned by certain third-party acts and omissions.

The exclusivity provision also reflects the General Assembly's anticipation of third party-occasioned injuries, and it immunizes employers against any sort of responsibility to the third party in a third-party action:

> (a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees . . . in any action at law or otherwise on account of any injury or death as defined in section [411(a)] . . . .

> (b) In the event injury or death to an employe is caused by a third party, then such employe . . . may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents,

---

[19]    77 P.S. § 431.  Defendants correctly note that, "[o]nce an employee has availed herself of the benefits and protections of the Act, the employee must operate within the confines of the statute and the employee waives the right to trial by jury with respect to that particular claim."  Defendants' Br. at 17 (citing *Grant v. GAF, Corp.*, 608 A.2d 1047, 1059 (Pa. Super. 1992)) (emphasis omitted).

[20]    77.P.S. § 411(1).

employes, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise . . . .[21]

Consistent with the compromise that the WCA reflects, the plain statutory language is a powerful headwind against which Franczyk struggles here. Section 411's definition of "injury in the course of [her] employment" suggests a categorical ban against any worker's claim for damages that is not among those specifically excepted. While these exceptions address some scenarios involving third parties, none of them apply under the circumstances of this case as presented. Our law is clear that, when a statute specifically excludes certain categories or classes from its reach, we will interpret the silence as to other categories or classes as intentional.[22] Thus, to the extent that Franczyk's allegedly impeded third-party claim seeks to recover for her physical injuries as such, the Act clearly precludes Defendants' liability beyond that provided by the Act.

Conversely, Defendants have the wind at their backs. They find no shortage of cases that have reaffirmed the breadth of the exclusivity provision's application, and in sweeping terms. In particular, Defendants observe that even an employer's intentional act does not necessarily trigger an exception to exclusivity. In *Poyser v. Newman & Co.*,[23] for example, the employee sued the employer, arguing that the employer had willfully disregarded safety regulations. This Court acknowledged that courts in other jurisdictions

---

[21]     *Id.* § 481.

[22]     *Thompson v. Thompson*, 223 A.3d 1272, 1277 (Pa. 2020) ("Under the doctrine of *expressio unius est exclusio alterius*, 'the inclusion of a specific matter in a statute implies the exclusion of other matters.'").

[23]     522 A.2d 548 (Pa. 1987).

had created an exclusivity carve-out for an employer's intentional wrongdoing, but it emphasized that those exceptions were rooted in statutory provisions for which our WCA has no analog. That the legislature had excluded certain wrongful third-party conduct from the exclusivity provision made clear that it "had the issue of intentional harm in mind."[24] The legislature chose not to extend protections associated with such harm to the context of an employer that itself engaged in wrongful conduct.[25]

In *Kuney v. PMA Insurance Co.*,[26] this Court similarly rejected an asserted exception to exclusivity for wrongful conduct. There, the employee alleged that PMA, the employer's insurer, had refused to pay the employee's claim without any reasonable basis for such refusal. The workers' compensation judge agreed, and directed PMA to pay the employee. The Commonwealth Court ultimately upheld that determination. But the employee also filed a separate civil suit against PMA, alleging that PMA's bad faith caused emotional harm distinct from the workplace injuries for which he received total disability benefits.[27] The trial court sustained PMA's preliminary objections based upon WCA exclusivity. The Superior Court reversed.

---

[24] *Id.* at 551.

[25] *Id.* at 551. We appeared to recognize a non-statutory carve-out of sorts for fraudulent misrepresentation in *Martin*, *supra*. As we explain below, a critical consideration in that case was that the particular injury alleged was distinct from the underlying workplace injury.

[26] 578 A.2d 1285 (Pa. 1990) ("*Kuney II*").

[27] The majority in *Kuney II* did not acknowledge the nature of the distinct harm upon which Kuney's civil suit was based. However, both the Superior Court and the dissenting justices in *Kuney* did so, albeit in general terms. *See Kuney v. PMA Ins. Co.*, 550 A.2d 1009, 1010 (Pa. Super. 1998) ("Appellant argues that this action . . . is directed at the employer's insurance carrier . . . for injuries caused by the carrier, separate and apart from those which were incurred at his workplace."); *Kuney II*, 578 A.2d at 1288

On PMA's appeal, this Court restored the trial court's order sustaining the preliminary objections.[28] "When the allegations of a claim have as their ultimate basis an injury compensable under the [WCA]," we explained, "the claim must be considered within the framework of the statute."[29] "Reduced to its essence, the [employee's] claim is that the insurance company wrongfully delayed his receipt of compensation benefits. This is clearly a matter pertaining to a workers' compensation claim and must therefore be adjudicated within the framework of the statute. . . ."[30]

Defendants also cite cases addressing alleged wrongdoing in connection with an employer's effort to avail itself of its right to subrogation against an employee's recovery in an authorized third-party action. Subrogation stems from Section 671 of the Act, which entitles an employer to recoup up to the amount of its or its insurance company's claim expenditures from any third-party recovery obtained by the employee.[31]

_____

(Papadakos, J., dissenting) ("The Act does *not* . . . apply to the economic and emotional harm suffered by a clamant due to the intentionally wrongful, obdurate, and fraudulent behavior of a [workers'] compensation carrier occurring *after* the employee has been separated from his place of employment.").

[28] A workers' compensation insurer is entitled to the same immunities and protections as the insured employer. *See* 77 P.S. § 501(a)(1).

[29] *Kuney II*, 578 A.2d at 1287.

[30] *Id.* In the *Kuney* litigation, the employee was not wholly without a remedy. The Act provides penalties for wrongfully denied or delayed payments. *See id.* (citing 77 P.S. §§ 717.1, 991, 996).

[31] *See* 77 P.S. 671 ("Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe . . . against such third party to the extent of the compensation payable under this article by the employer . . . .").

In *Curtis v. Simpson Chevrolet*,[32] the employee was injured when the brakes failed on a truck that the employee was driving. He collected workers' compensation benefits and separately settled a third-party claim. The employee resisted subrogation against the third-party settlement because, on the employee's account, subrogation is an equitable remedy and the subrogors had "unclean hands," precluding subrogation.[33] In particular, the employee maintained that subrogors failed to satisfy their "affirmative duty to assist [him] in his efforts to recover against third parties."[34] The court rejected the argument, explaining that "the plain wording of the statute . . . does not give the employer a mere right to be subrogated but says that the employer 'shall be subrogated.' There are no exceptions. . . . Pennsylvania's legislature clearly intended [that] an employer was to be repaid from a third-party recovery," even if "it shares responsibility with the third party for the injury."[35]

Taken as a whole, Defendants' argument is that the language of the WCA means what it says when it speaks most broadly about the liability protections of the Act's

---

[32]    348 F. Supp. 1062 (E.D. Pa. 1972).

[33]    *See generally Estate of Pedrick*, 482 A.2d 215 (Pa. 1984) (noting that unclean hands bar recovery in equity).

[34]    *Curtis*, 348 F. Supp. at 1064.

[35]    *Id.* In *Kelly v. WCAB* (*A-P-A Transport Corp.*), 527 A.2d 1121 (Pa. Cmwlth. 1987), our Commonwealth Court ruled similarly. There, the employee collected workers' compensation benefits and litigated a third-party claim to a settlement. The employer asserted its subrogation interest. The employee argued that the employer was not entitled to subrogation because, during the third-party litigation, the employer withheld critical records and maintained that the employee was not injured, diminishing the amount the employee was able to recover. The Commonwealth Court disagreed and upheld the employer's right to subrogation.

exclusivity provision. Even non-, mis-, and malfeasance generally have not thwarted application of the exclusivity provision.

Franczyk delays addressing these precedents in favor of addressing at length the nature of the duty that she contends Defendants breached.[36] On Franczyk's account, her claim is not for the underlying injury but rather for the distinct harm she suffered when Defendants failed to take reasonable steps to enable her to pursue a third-party claim against the dog owner.[37]

Franczyk relies upon our recent decision in *Dittman v. UPMC.*[38] In that case, electronic data collected by UPMC from its employees allegedly was compromised. This Court held that that an employer has a duty to take reasonable steps to secure the personal information that it solicits from its employees. Franczyk derives from *Dittman* the more sweeping proposition that "an employer has a duty to protect and preserve the interests of its employees"—here, an employee's interests in a third-party claim arising out of a workplace injury.[39]

---

[36]    *See* Franczyk's Br. at 13-25.

[37]    In doing so, Franczyk appears to concede by implication that, if her claim arises from the workplace injury as such, then Defendants are protected by WCA exclusivity.

[38]    196 A.3d 1036 (Pa. 2018).

[39]    Franczyk's Br. at 13. Specifically, Franczyk argues:

[T]his Honorable Court specifically held in *Dittman* that "[c]ommon law duties stated in general terms are framed in such fashion for the very reason that they have broad-scale application." *Dittman*, 196 A.3d at 1046 . . . . This Honorable Court further reasoned in *Dittman* that "[l]ike any other cause of action at common law, negligence evolves through either directly applicable decisional law or by analogy, meaning that a defendant is not categorically exempt from liability simply because appellate decisional law has not specifically addressed a theory of liability in a particular context."

In *Dittman*, we relied upon the five "*Althaus* factors," which we look to when we are asked to recognize a duty that is novel to Pennsylvania common law. These factors are "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution."[40] In *Dittman*, we analyzed these factors at length, considering their interplay under the narrow circumstances of that case.

Franczyk addresses the *Althaus* factors in turn. We find ample reason to be skeptical of her limited analysis of each factor, and she provides no authority other than *Dittman* that supports anything remotely akin to the duty that she would impose.[41]

---

*Id.* (citing *Scampone v. Highland Park Care Center, LLC*, 57 A.3d 582, 599 (Pa. 2012)).

Franczyk's Br. at 14-15 (Franczyk's emphasis removed; citations normalized). Notably, this Court has ruled that an employer has no affirmative duty to inform an employee of all available workers' compensation benefits. *See Miller v. Keystone Ins. Co.*, 636 A.2d 1109, 1113 (Pa. 1994) (rejecting that the employer has an affirmative duty to apprise a compensation claimant of any or all available benefits and reaffirming the Court's holding in *Taglianetti v. W.C.A.B. (Hosp. of the Univ. of Pa.)*, 469 A.2d 548 (Pa. 1983), to like effect). The *Dittman* passage states general principles of negligence and the common law. It does not explain how those general principles impose the duty she asserts.

[40] *Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000).

[41] Franczyk's effort to apply (in particular) the fifth factor leaves out critical context. Regarding "the overall public interest in the proposed solution," *id.* at 1169, Franczyk posits that, absent the asserted duty, a large number of similarly situated employees will be "left at the mercy of Section 481(a) of the [WCA] and therefore unable to recover the full amount of damages . . . occasioned by their injuries." Franczyk's Br. at 24. She submits that "the refusal to impose such a necessary duty upon employers would permit such employers to disregard and/or suppress the rights of their employees with impunity." *Id.* But as to the countervailing consequences, Franczyk cites only the minimal "burden" upon employees of making reasonable efforts to obtain sufficient information to enable a third-party claim. Given questions concerning just what efforts would be reasonable in the face of a recalcitrant third party, it is difficult to take even this contention at face value.

Defendants challenge Franczyk on the question of duty,[42] but we will assume without by any means deciding that, in a world without the WCA, an employer would have precisely the duty that Franczyk describes. To posit the existence of a common-law claim is not to preclude its restriction by statute. Restriction of otherwise applicable common-law claims is precisely what the Act's exclusivity provision does.

Franczyk's effort to meet the question presented on its terms is limited, but she cites our decision in *Martin v. Lancaster Battery Co., Inc.*,[43] which is the precedent most favorable to her view.[44] In that case, employees were exposed to lead in connection with the manufacture of batteries. Federal regulations required that the employer regularly test employees' blood for lead. For several years, the employer withheld or altered test results indicating blood toxicity. The severity of the plaintiff-employee's conditions could have been substantially reduced but for the employer's deception. The trial court sustained the employer's WCA exclusivity-based preliminary objections, but the Superior Court reversed. We affirmed the Superior Court's decision. The trial court had relied upon *Poyser*,[45] but we found that case distinguishable. While in *Poyser* the alleged unsafe work conditions had been associated with the employer's fraudulent

---

But equally important is a consideration she omits: the likelihood that imposing such a burden would lead to precisely the sort of litigation the WCA seeks to avoid, because once an employer's "reasonableness" becomes a factor determinative of liability, a trial likely follows.

[42]    *See* Defendants' Br. at 13 n.11 ("Here, the alleged conduct does not rise to the level of tortious conduct, even if believed, and the law expressly bars the negligent tort action that [Franczyk] is attempting to create.").

[43]    606 A.2d 444 (Pa. 1992).

[44]    *See* Franczyk's Br. at 37-38.

[45]    *See supra* n.23 and accompanying text.

misrepresentations to federal regulators, in *Martin* the fraudulent misrepresentation was made directly to the employee.

More importantly for purposes of this discussion, we drew a distinction between the original workplace injury and the aggravation that the employee attributed to the employer's deception. We acknowledged other jurisdictions' decisions rejecting a claim outside of their respective workers' compensation schemes, even in cases of such fraudulent misrepresentations. But we underscored that those cases were "generally concerned with employees receiving duplicate monetary awards for single injuries."[46] In *Martin*, though, the employee was not seeking compensation for the initial exposure but rather for the distinct (and preventable) aggravation of the original injury—an injury unto itself. We explained:

> [W]hen the Legislature enacted the [WCA] in this Commonwealth, it could not have intended to insulate employers from liability for the type of flagrant misconduct at issue herein by limiting liability to the coverage provided by the [Act]. There is a difference between employers who tolerate workplace conditions that will result in a certain number of injuries or illnesses and those who *actively* mislead employees already suffering as the victims of workplace hazards. . . . The aggravation of the [physical] injury arises from and is related to the fraudulent misrepresentation of the employer.[47]

Although Defendants provide a lengthy analysis based upon authority drawn from Pennsylvania decisions and from cases in other jurisdictions, that discussion arguably gilds the lily. At a minimum, the WCA has anticipated and foreclosed virtually any sort of negligence claim against an employer "on account of" a physical injury that occurs in the

---

[46]     *Martin*, 606 A.2d at 447.

[47]     *Id.* at 448 (citing *McGinn v. Valloti*, 525 A.2d 732 (Pa. Super. 1987) (similarly excluding "fraudulent concealment of diseases already developed" from WCA exclusivity)).

workplace. It is less clear that the negligence claim so excluded must be a claim for personal injury. The legislature's goal was not to immunize, but merely to cabin, an employer's obligation to employees for workplace injuries, in recognition of the fact that injuries are an inevitable incident of the workplace. The means chosen to limit that exposure was a system to ensure prompt, reasonable compensation to injured employees while protecting the employer from the burden of case-by-case litigation. Against this statutory backdrop, it is only by categorically divorcing her claim from the injury upon which it is predicated, as in *Martin*, that Franczyk can hope to establish that her claim lies wholly outside the Act's strictures.

In this attempt, Franczyk fails. *Martin*'s truly separable injury is not present here. Pennsylvania case law shows this by example. As noted above, the *Kuney* Court applied exclusivity where the claim was not nominally for the injury itself, but rather for the insurer's refusal to pay what the employee was due. We found the formalistic distinction insufficient to sever the asserted duty from the injury that touched off the dispute. While the alleged harm was the denial of timely compensation for the underlying personal injury, the compensation, as such, was still determined by the workplace injury itself.

The Superior Court also has looked past the way a claim is framed in order to determine its true basis. Thus, in *Santiago v. Pennsylvania National Mutual Casualty Insurance Co.*,[48] the court held that WCA exclusivity barred a lawsuit that sought relief for an insurer's bad faith in settlement negotiations, which allegedly so adversely affected the employee's psychological health that he attempted to take his own life. Citing *Kuney*, the court noted that, even though the tortious acts complained of in that case occurred

---

[48]    613 A.2d 1235 (Pa. Super. 1992).

after the workplace injury and thus stated a distinct harm, those acts and the consequent injury were "completely intertwined with the original injury."[49]

Franczyk, too, presents a claim based upon an injury described as distinct from, and arising after, the workplace injury itself, and she also asserts wrongful conduct pertaining to that harm. But, as in *Kuney* and *Santiago*, the asserted injury—by whatever name—is "intertwined" inextricably with the workplace injury. Franczyk's asserted loss is her third-party claim, but the only principled way to determine the damages would be to make an educated guess as to what a jury might have awarded her in compensatory and non-monetary damages.[50] This would require a trial within a trial, with Franczyk asking

---

[49] *Id*. at 1243 (discussing *Kuney II*, *supra*; quoting *Taras v. Wausau Ins. Cos.*, 602 A.2d 882, 887-88 (Pa. Super. 1992)).

[50] Invoking *Martin*, Chief Justice Todd's concurrence would focus upon the intentionality of the employer's conduct, deeming that factor sufficient to support today's ruling without regard to the necessity of an injury severable from the underlying workplace injury. *See* Conc. Op. at 3-5. The Concurrence suggests that such an approach is necessary in order to leave the door open for future suits against an employer that intentionally interferes with an employee's ability to pursue a third-party claim for a workplace injury. *See id*. at 5 ("[I]n the appropriate case there may . . . be a distinction between an employer's negligent investigation of a work injury, which results in the mere impairment of the employee's right to sue a third-party tortfeasor, and an employer's intentional interference with that right."). But the Concurrence understates the degree to which the two bases for *Martin*'s holding intertwine. And here the Concurrence must consider *Kuney II*, discussed above, which could be read as more restrictive than *Martin* or our decision in this case. In *Kuney II*, the employee alleged that the employer's insurer—standing in the employer's stead pursuant to 77 P.S. § 501(a)(1)—engaged in bad faith conduct that caused emotional injuries distinct from the workplace injury. This Court found that no exception to the exclusivity provision applied, explaining that, "[w]hen the allegations of a claim have as their ultimate basis an injury compensable under the [WCA], the claim must be considered within the framework of the statute." 578 A.2d at 1287; *cf. Ducjai*, 656 A.2d at 109 ("The comprehensive system of substantive, procedural, and remedial laws comprising the [workers'] compensation system should be the exclusive forum for redress of injuries in any way related to the work place."). Tellingly, the *Kuney II* majority implicitly rejected the dissenting justices' contention that the WCA should not preclude claims for distinct emotional harm caused by "bad faith misrepresentation, fraud, intentional infliction of emotional distress, and outrageous

the jury to imagine itself empaneled in a personal injury case. For practical purposes, Franczyk would sue the absent dog owner for personal injury, and Defendants would be forced to defend against that claim in the dog owner's stead. Thus, Defendants would litigate precisely the sort of claim that the WCA is supposed to prevent.[51] The architects of the WCA held that the employer need not even indemnify a third party, let alone defend it.[52]

The proposed subversion of the WCA's goals would not end there. Because the WCA generally allows an employer to subrogate against any recovery that the employee obtains from a third-party in a personal injury suit arising from the workplace injury even in the presence of employer misconduct, if Franczyk prevailed against Defendants, either the jury or the judge then might have to consider the effect upon the verdict of Defendants' right to subrogation. This would call into question whether the court must reduce the

---

conduct arising outside the course of appellee's employment." *Kuney II*, 578 A.2d at 1288-89 (Papadakos, J., dissenting) (cleaned up). Indeed, *Martin* arguably softened *Kuney II* in preserving the claim of fraudulent misrepresentation presented there. In a case that doesn't call upon us to do so, we see no reason to invite any further expansion of the *Martin* exception beyond its facts. But nothing in this Opinion aims to abrogate *Martin*, which, as the Concurrence notes, carves out an exclusivity exception for circumstances not present in this matter. Thus, while the range of third-party claims that remain permissible is very limited, a circumstance that the WCA compels, such claims are not entirely foreclosed. Moreover, this Opinion does not presume to anticipate or foreclose claims arising in future cases that an appellate court finds more like *Martin* than *Kuney II* or this case.

[51]     While this interior trial would comprise the heart of Franczyk's claim, Defendants would not likely defend against only that aspect of the claim. They also would likely defend separately against one or more of the elements of negligence asserted on the basis of an alleged breach of the duty to act affirmatively in furtherance of Franczyk's claim. Thus, Defendants' trial burden would be that much greater.

[52]     *See* 77 P.S. § 481(b).

verdict by an amount equivalent to the hypothetical subrogation interest against the same verdict if it had been entered against the dog owner. The Act does not anticipate this byzantine scenario, which would compound Defendants' litigation burden and inject additional uncertainty into the process.[53]

Rather than manufacture such trouble, we will apply the plain language of the WCA, the legislative intent it bespeaks, and our most illuminating case law. If the result in this case is not entirely equitable for Franczyk, that is an unavoidable incident of the balance that the General Assembly struck. It is in the nature of global policy compromises that, in any given case, either party may receive more or less than what equity alone might call for. The General Assembly made a calculated if generalized judgment about the public interest writ large, and it is not our place to subvert legislative intent based upon the outcome or equities of any one case.

We reverse the Superior Court's order affirming the trial court's denial of summary judgment. We remand for the entry of summary judgment in favor of Defendants.

Justices Donohue, Dougherty, Mundy and Brobson join the opinion.

Chief Justice Todd files a concurring opinion.

---

[53] Franczyk's proposed cause of action also would create perverse incentives for employees. When injured by a third party on the job, employees would have little incentive to look after their own interests. Better to hang back and put the onus on the employer: if the employer obtains the information, then the employee can pursue her claim. If not, the employee can sue the employer, who may have deeper pockets and be less equipped to defend than the third party. Because we reject Franczyk's claim, employers' and employees' interests in preserving third-party claims align—employees for obvious reasons, employers because if the employee recovers a third-party judgment, the employer can recoup at least some of its expenses through subrogation.